

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Julie D. Podlesni* | *Suite 400* | *DIRECT: 410-209-4973* |
| *Special Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Julie.D.Podlesni@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0716* |

FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

April 14, 2014

APR 2 8 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

**VIA EMAIL**
Susan Hensler, Esq.
Assistant Federal Public Defender

Re: Plea Agreement in *United States v. Jose Vasquez Chicas*, JFM-13-0638

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **April 24, 2014**, it will be deemed withdrawn. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1.      The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with Unauthorized Reentry of a Removed Alien, in violation of 8 U.S.C. § 1326(a). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

<u>Elements of the Offense</u>

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a.      That the Defendant is not a citizen or national of the United States;

b.      That the Defendant was previously denied admission, excluded, removed, or deported from the United States, or departed the United States while under an order of exclusion, deportation, or removal;

c.      That the Defendant thereafter knowingly entered the United States and was found in the District of Maryland on or about the date charged.

d.      That the Defendant had not obtained the express consent of the Attorney General or Secretary of the Department of Homeland Security to reapply for admission to the United States before he re-entered the United States.

## Penalties

3.      The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: two (2) years imprisonment, a fine of $250,000, and a period of supervised release of one (1) year. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked – even on the last day of the term – and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Case 1:13-cr-00638-JFM   Document 19   Filed 04/28/14   Page 3 of 9

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Consent to Removal from the United States

5.      The Defendant acknowledges that he is subject to removal from the United States and agrees not to contest any removal proceedings brought by the Department of Homeland Security (DHS). If the DHS files a Notice to Appear or other administrative document requiring the Defendant to show cause why he should not be removed, the Defendant agrees to request an expedited removal hearing and to consent to removal. The Defendant acknowledges that by consenting to removal, he will be removed from the United States expeditiously upon completion of his term of incarceration. The Defendant knowingly waives any and all rights to appeal, reopen, reconsider or otherwise challenge his removal.

6.      The Defendant agrees to waive any rights he may have to apply for any form of relief or protection from removal, deportation or exclusion under the Immigration and Nationality Act (as amended) and related federal regulations. The rights the Defendant is waiving include, but are not limited to the ability to apply for voluntary departure, asylum, withholding of

deportation or removal, cancellation of removal, suspension of deportation, adjustment of status and protection under the Convention Against Torture. As part of this agreement, the Defendant specifically acknowledges and states that he has not been persecuted or tortured in, and has no present fear of persecution or torture in El Salvador on account of race, religion, nationality, political opinion, or membership in a particular social or political group.

7.     The Defendant agrees that upon entry of this plea agreement, the Defendant abandons any and all applications for relief from deportation, removal or exclusion he may have filed and agreed not to file or prosecute any application for relief from removal, deportation or exclusion before any federal court, immigration court, Board of Immigration Appeals or DHS prior to the Defendant's removal from the United States.

8.     The Defendant agrees to assist the DHS in his removal. Specifically, the Defendant agrees to assist the DHS in procuring travel or other documents necessary for the Defendant's removal; to cooperate with representatives of the country or countries to which the Defendant's removal is directed; and to execute promptly those documents which are needed to effect the Defendant's removal. The Defendant agrees that her failure or refusal to cooperate in his removal shall constitute a material breach of this agreement and may subject the Defendant to additional criminal penalties.

<u>Advisory Sentencing Guidelines Apply</u>

9.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

10.     This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.     The applicable guideline is U.S.S.G. § 2L1.2. This guideline carries a Base Offense Level of 8. (SUBTOTAL = 8).

b.     This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to

sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. (**TOTAL = 6**).

11.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

12.     This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures, or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Plea Terms Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)

13.     The parties stipulate and agree that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a sentence of 7 months imprisonment in the custody of the Bureau of Prisons, to be followed by 1 year of supervised release, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

14.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Waiver of Appeal (Rule 11(c)(1)(C))

15.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal his conviction. Both the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal a sentence of 7 months imprisonment and a term of 1 year of supervised release, as well as whatever fine or order of restitution that may be imposed and any issues that relate to the establishment of the advisory guidelines range. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

16.     The Defendant may withdraw from the agreement if the Court wishes to impose a sentence in excess of 7 months and the government may withdraw if the Court wishes to impose a sentence below 7 months and/or the sentence does not include 1 year of supervised release. In the event that the Court rejects the plea, but neither side wishes to withdraw from the agreement,

-5-

then nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

## Obstruction or Other Violations of Law

17.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement that would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1; (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report; (iii) moves to withdraw his guilty plea; or (iv) commits any offense in violation of federal, state, or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

18.     The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have him sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

Julie D. Podlesni
Special Assistant United States Attorney

I have read this agreement with the assistance of a Spanish interpreter, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4/28/14
_____
Date

_____
Jose Vasquez Chicas

I am Mr. Vasquez Chicas's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him with the assistance of a Spanish interpreter. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4/28/14
_____
Date

_____
Susan Hensler, Esq.

## ATTACHMENT A:
## STIPULATED FACTS – UNITED STATES v. *JOSE VASQUEZ CHICAS*

*If this matter had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

The Defendant, Jose Vasquez Chicas, is a 43-year old citizen of El Salvador who has been removed from the United States thrice before. Mr. Vasquez Chicas (aka: Jose Leandro Vasquez-Chicas, Jose Leandro Vasquez, Juan Vasquez Amaya, Chicas Romero, and Fredis Chicas Romero) was born in El Salvador to Salvadoran parents on or about July 23, 1970 (aka: 11/7/74, 11/6/76, 7/11/84).

He first entered the United States on or about November 20, 1997 near Douglas, Arizona. He first came to the attention of federal Immigration agents in connection with his arrest on or about August 7, 2001 for burglaries. On or about March 7, 2002, he pled guilty (as "Jose Leandro Vasquez") to two counts of breaking and entering and one count of possession of burglary tools and received a sentence of 12-18 months imprisonment. On or about April 8, 2002, he was ordered removed by an Immigration judge and was removed from the United States pursuant thereto at Miami on or about May 16, 2002.

Mr. Vasquez Chicas re-entered the United States sometime thereafter (place and date unknown), and was again arrested in or about September 2002 in connection with a string of burglaries. On or about May 23, 2003, he was convicted (as "Juan Vasquez Amaya") of 16 counts of breaking and entering and 10 counts of larceny after breaking and entering and received a cumulative sentence of 32-40 months of imprisonment. He was discharged from the North Carolina Department of Corrections on or about November 8, 2005, but he was arrested again on or about May 1, 2006 (as "Fredis Romero Chicas") in connection with a burglary. On or about May 23, 2006, he pled guilty to one count each of breaking and entering and larceny after breaking and entering and received a sentence of 8-10 months imprisonment. He was released from custody on or about January 4, 2007, and his warrant of removal was reinstated on or about April 24, 2007. He was removed from the United States pursuant thereto on or about May 4, 2007 (as "Juan Amaya").

Mr. Vasquez Chicas unlawfully re-entered the United States again sometime thereafter (place and date unknown) and was found and arrested by Immigration agents on or about October 30, 2012 in connection with a vehicle stop. The Order of Removal was reinstated on or about June 3, 2013, and, on or about July 27, 2013, he was again removed from the United States at Louisiana (as "Fredis Romero" and "Jose Chicas").

Mr. Vasquez Chicas unlawfully re-entered the United States again sometime thereafter (place and date unknown, but believed to be in Arizona on or about October 15, 2013 per his admission to federal Immigration agents), and was again arrested by federal Immigration agents on or about November 1, 2013. He stated that he was born in El Salvador and that his true and correct name was Fredis Chicas Romero but that he had used the name Jose Vasquez-Chicas.

When the Defendant was removed in 2002, 2007, and 2013, he was warned not to reenter the United States without first obtaining permission from the Attorney General or his designated successor, the Secretary of the Department of Homeland Security. At no time – including when the Defendant was found within the United States most recently on or about November 1, 2013 – has the Defendant obtained consent from the Attorney General or his designated successor, the Secretary of the Department of Homeland Security, for re-admission in the United States, and his status was that of an illegal alien when he was found within the United States.

_____4/28/14_____        _Jose Vasquez Chicas_____
Date                         Jose Vasquez Chicas

_____4/28/14_____        _____
Date                         Susan Hensler, Esq.